Jones, J.
We are confronted, at the outset, with the decision of this court upon important features of this controversy, reported in Columbus Packing Co. v. State, ex rel. Schlesinger, 100 Ohio St., 285. The judgment in that case was based upon the conclusion that Section 1155-1 et séq., General Code (107 O. L., 594), commonly called the Cold Storage Act, should be read in pari materia with what is known as the Valentine Anti-trust Law, Section 6390 et seq., General Code (93 O. L., 143), and that the state might avail itself of equitable remedies therein implied in order to uphold the former judgment of the trial court in seizing upon and selling the pork loins in controversy before a final hearing upon the merits.
The Storage Act and the Valentine Act are not in pari materia. They were not enacted at the same time and each had a separate and distinct purpose *475 in view, as shown by their several titles when enacted. The storage act was a health statute, pure and simple, as an examination of that act in its entirety discloses. This is evidenced by the different periods of time various food products were allowed to remain in storage before sale. The purpose of the Valentine Law is to prevent hoarding, and restraint of trade, evincing that purpose in its title, and to provide for the punishment of persons restraining “free competition in commerce and all classes of business in the state.” The remedies employed by the ‘Valentine Act did not contemplate their use for the violation of the Storage Act. The Valentine Act, specifically, in Section 6400, General Code, confines the operation of its civil remedy to violations of ‘ ‘ any provision of this chapter. ’ ’ Furthermore, Section 6400, General Code, provides for drastic action against corporations that violate the act, all of which tends to show that the specific remedies provided in the Valentine Act are to control solely the violations of that act. However, were this not so, the judgments of the lower courts should be reversed for the obvious reason that the defendants in the trial court did not have their rights determined by due course of law. Orderly procedure lies at the foundation of our state jurisprudence. Developments at the former hearing disclose that the defendant Packing Company’s property was seized by the court through the instrumentality of a receiver on the same day the petition was filed, and without notice to its owner. The record discloses that counsel was appointed on the same day, and without notice, the appointment entailing the sum of $6500 in counsel fees. Three days after the *476 filing of the petition a hearing was had upon the affidavits and pleadings filed, and an order made by the trial court to sell the property in controversy, before the issues were finally determined by the court. While the action was nominally one in personami it was actually a proceeding in rem ag’ainst the- property seized and finally disposed of. The effect of the judgment below was to determine the rights of property in a preliminary hearing, leaving the contested issues made by the pleadings to be later determined. The query naturally arises, what boots it should the defendants win on the issues finally joined if in the meantime the res in controversy before the court has been seized by judicial process and ordered to be sold, during which process costs and fees would inevitably attach? We are of the opinion that such a judgment is a deprivation of property without the due process guaranteed by Section 16, Article I, of our Constitution, and conserved by our laws of procedure. Our code provides a time when answers and replies shall be filed, and the issues joined. In the ordinary course of procedure, either party has a right to amend his pleading. The litigants were entitled to a trial, which Section 11376, General Code, defines as a “judicial examination of the issues, whether of law or of fact.” Section 11378, General Code, requires the issues to be made by the pleadings. The original or preliminary judgment did not purport to rest upon the" merits, but was a disposition of the property before that stage was reached. That judgment was a provisional judgment, of which Williams, J., in Trustees v. McClannahan, 53 Ohio St., 403, 409, says: “The proper office of the provisional *477 injunction is to prevent threatened irreparable injury, which should be averted, until opportunity is afforded for a full and deliberate investigation of the case at the trial, and, to preserve until that time, as far as possible, the condition of things existing when the injunction is obtained, to the end that the rights of the parties as established by the final judgment rendered on the trial, may be secured to them by the enforcement of the judgment. * * * The hearing upon the motion is not the mode provided by law for the trial of the issues joined in the action, and neither party can be deprived of the lawful mode of trial by the decision on the motion, whatever it may be. * * * A hearing upon a. motion was not designed to take the place of a trial. It may be had upon affidavits taken without opportunity for cross-examination, and is not in any proper sense a trial. Therefore, upon the overruling of a motion to vacate a provisional injunction, the court is not authorized, without a trial of the issues, to enter final judgment for the plaintiff; nor can the petition be properly dismissed, without such trial, upon the dissolution of the injunction.”
No opportunity was given to the defendants to rest their case upon the issues which should finally determine the case. This is evident from the fact that long after the case was determined in the preliminary proceeding, on August 9, 1919, one of the defendants, the Creamery Company, filed its amended answer, containing a new and distinct defense, which the trial court did not have before it for consideration, and the validity of which was not determined by it. This defense alleged that the Creamery Company was at all the times mentioned *478 in the petition, and when its storage products were seized by the receiver, acting in pursuance of the rules and regulations of the United States Food Administration, which permitted it to hold the pork product in storage for a period of twelve months. In our opinion the litigants should obtain the judgment of the lower courts upon the legal phase of the controversy.
In the reported case, supra, this court seems to have attached considerable importance to the fact that the pork loins had been in storage for a period exceeding six months. It is true that the answer of the Packing Company admitted, in effect, that this was so, but alleged that the product had been sold prior to that time to purchasers to be delivered in quantities as needed. However, there is no proof of the violation of the Storage Act by the Creamery Company. Section 1155-13, General Code, relates only to those who “shall sell, or offer, or expose for sale,” the pork loins held in cold storage for a period of more than six months. There is no proof that the Creamery Company offended against the act, even though it be conceded that the Packing Company did so by delivering after the six months had expired. Mere storing of pork loins for a period of six months was not per se a violation of the Storage Act; that is violated only by one who “shall sell, or offer, or expose for sale” pork loins held longer than six months. Neither was the mere storing for more than six months, ipso facto, a violation of the 'Valentine Act. In a proper case the length of the storage may be considered in connection with other acts, or proof showing “combination of capital, skill or acts by two or more” (Sec *479 tion 6391, General Code) for the purposes indicated by the act. Therefore the prior judgment against the defendants was evidently erroneous, unless proof was offered that they had entered into an unlawful agreement within the purview of the Valentine Law. The only proof offered in that respect was the petition on file in the case. However, the answer of both defendants, the Packing Company and the Creamery Company, explicitly denied any such purpose or agreement, so that upon that phase of the case there was a lack of proper proof sustaining it. That feature of the controversy being out of the case, for lack of proof, the only civil remedy available prior to final hearing would be obtaining a provisional injunction to prevent the further threatened violation of the Storage Act.
If defendants were threatening to sell, since the Storage Act does not provide for seizure and sale of the food products, the only civil remedy available prior to a final hearing would be a provisional injunction authorized by Section 11876, General Code, restraining the defendants from committing an act, which, if committed, would make the final judgment ineffectual; or, upon proper showing, a provisional order for a receiver might be obtained under sanction of Section 11894, General Code, as auxiliary to the main action.
No pretense was made that these pork loins deposited in the cold-storage warehouse were of such perishable character as to depreciate in value, or would become so contaminated as to be unsalable. In fact the court ordered the same pork loins to be sold “at such place or places as the receiver shall deem proper. ’ ’ It may be assumed that such a judi *480 cial order would not have been made had not the product been fit for public consumption. Were it shown to. the court that these pork loins were of such a nature as to become in the immediate future perishable or so contaminated as to be unfit for public consumption, no doubt, in that event, and in the exercise of judicial discretion, the court would order a sale thereof.
In our judgment, prior to the action of the court upon the issues joined between the parties, as shown by this record, the only ancillary relief plaintiff was entitled to was that of a provisional injunction should it be shown that the Packing Company proposed to sell its product in violation of state and federal law. So far as Packing Co. v. State, supra, conflicts with the conclusions here announced, that case is overruled.
The judgment of the trial court against defendants upon the pleadings was erroneous, as was the judgment of the court of appeals in its affirmance. However, sinee'the parties have not had a trial upon the issues as they may be finally joined, we content ourselves with reversing the judgments of the lower courts and remanding the cause, to the court of common pleas for further proceedings according to law.

Judgment reversed.

Marshall, C. J., Hough, Robinson and Clark, JJ., concur.
Wanamaker, J., dissents.